June 12, 2008

Mr. Robert Scott
Commissioner of Education
Texas Education Agency
1701 North Congress Avenue
Austin, Texas 78701-1494

Opinion No. GA-0637

Re: Whether impact fees may be imposed upon school district property under chapter 395 of the Local Government Code, and whether certain exactions constitute "impact fees" (RQ-0658-GA)

Dear Mr. Scott:

On behalf of the Spring Independent School District, you ask whether impact fees may be imposed upon school district property under chapter 395 of the Local Government Code and whether certain exactions constitute "impact fees."[1]

## I. Background

In 2006, we considered section 11.168 of the Education Code and "its effect on an independent school district's authority to build or pay for infrastructure for new schools within the district." Tex. Att'y Gen. Op. No. GA-0496 (2006) at 1. Section 11.168 provides:

> The board of trustees of a school district may not enter into an agreement authorizing the use of school district employees, property, or resources for the provision of materials or labor for the design, construction, or renovation of improvements to real property not owned or leased by the district.

TEX. EDUC. CODE ANN. § 11.168 (Vernon 2006). The primary question addressed by Attorney General Opinion GA-0496 was "whether section 11.168 prohibits a school district from paying impact fees imposed by a municipality to help fund water, sewer, and roadways necessary to serve

---

[1]Letter from Robert Scott, Commissioner of Education, to Honorable Greg Abbott, Attorney General of Texas (Dec. 14, 2007) (on file with the Opinion Committee, *also available at* http://www.texasattorneygeneral.gov) [hereinafter Request Letter]. *See* Letter from Jeffrey J. Horner, Bracewell & Giuliani LLP, on behalf of Spring Independent School District, to David Anderson, General Counsel, Texas Education Agency (Nov. 15, 2007) (attached to Request Letter) (on file with the Opinion Committee) [hereinafter Horner Letter #1]; Letter from Jeffrey J. Horner, Bracewell & Giuliani LLP, to Nancy Fuller, Chair, Opinion Committee, Attorney General of Texas (Jan. 25, 2008) (on file with the Opinion Committee) [hereinafter Horner Letter #2].

new school development, when those improvements will not be made on land owned or leased by the district." Tex. Att'y Gen. Op. No. GA-0496 (2006) at 2. The opinion construed section 11.168 relative to chapter 395 of the Local Government Code. *Id. See* TEX. LOC. GOV'T CODE ANN. ch. 395 (Vernon 2005 & Supp. 2007) (providing for impact fees).

Opinion GA-0496 noted that section 11.168 "prohibits a school district from entering into *an agreement*," and that the common meaning of the term "agreement" indicates an "evidence [of] harmony or accordance in opinion or feeling." Tex. Att'y Gen. Op. No. GA-0496 (2006) at 2–3 (emphasis added). The opinion then pointed out that under chapter 395 of the Local Government Code, an impact fee is a "charge or assessment *imposed* by a political subdivision." *See id.* at 3 (emphasis added); TEX. LOC. GOV'T CODE ANN. § 395.001(4) (Vernon 2005). The opinion found that, under the common meaning of the word "impose," an impact fee "is a unilateral action that does not involve harmony or accordance in feeling or opinion." Tex. Att'y Gen. Op. No. GA-0496 (2006) at 3. Thus, the opinion concluded that "section 11.168 does not prohibit an independent school district from paying impact fees imposed by a municipal corporation on the district for the district's new school development." *Id.*

## II.     Analysis

### A.     Effect of Section 395.022(b), Local Government Code

During its Eightieth Session, the Legislature adopted section 395.022(b) of the Local Government Code. Act of May 11, 2007, 80th Leg., R.S., ch. 250, § 1, 2007 Tex. Gen. Laws 356, 356. That section provides:

> (b) *A school district is not required to pay impact fees imposed under this chapter unless the board of trustees of the district consents to the payment of the fees by entering a contract with the political subdivision that imposes the fees.* The contract may contain terms the board of trustees considers advisable to provide for the payment of the fees.

TEX. LOC. GOV'T CODE ANN. § 395.022 (Vernon Supp. 2007) (emphasis added).[2]

The "primary objective when construing a statute is to ascertain and give effect to the legislature's intent." *City of Houston v. Jackson*, 192 S.W.3d 764, 770 (Tex. 2006). A court, and likewise this office, begins its analysis of a statute by construing its plain language. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 356 (Tex. 2006) (Johnson, J., concurring in part and dissenting in

---

[2]According to a bill analysis prepared by the House Research Organization, this new legislation was enacted in part as a reaction to the conclusion reached in Attorney General Opinion GA-0496. HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. H.B. 2038, 80th Leg., R.S. (2007) (companion bill to Senate Bill 883). Senate Bill 883 was later enacted, amending section 395.022 of the Local Government Code. *See* Act of May 11, 2007, 80th Leg., R.S., ch. 250, § 1, 2007 Tex. Gen. Laws 356, 356.

part). "The Legislature's intent is determined from the plain and common meaning of the words used." *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997).

The plain language of section 395.022(b) demonstrates that the legislative intent was to exempt a school district from the payment of mandatory impact fees to a political subdivision under chapter 395 *unless* the district's board of trustees enters into a contract with the political subdivision to pay the fee. Section 395.022(b), by specifically declaring that a school district may enter into a contract with a political subdivision to pay an impact fee, but not requiring it to do so, must be read in conjunction with section 11.168 of the Education Code. Section 395.022(b) acts to mitigate the implication of Attorney General Opinion GA-0496 that a school district must pay an impact fee because such a fee is *imposed* rather than being the subject of an agreement.

We also note that section 395.022(b) could be construed to pose a conflict with section 11.168 of the Education Code because section 11.168 prohibits a school district from entering "into an agreement authorizing the use of school district employees, property, or resources for the provision of materials or labor for the design, construction, or renovation of improvements to real property not owned or leased by the district." TEX. EDUC. CODE ANN. § 11.168 (Vernon 2006). The Code Construction Act provides, with an exception not relevant here, that "if statutes enacted at the same or different sessions of the legislature are irreconcilable, the statute latest in date of enactment prevails." TEX. GOV'T CODE ANN. § 311.025(a) (Vernon 2005). Section 11.168 of the Education Code was enacted by the Seventy-ninth Legislature. *See* Act of May 27, 2005, 79th Leg., R.S., ch. 979, 2005 Tex. Gen. Laws 3286, 3286. Section 395.022(b) of the Local Government Code was enacted by the Eightieth Legislature. *See* Act of May 11, 2007, 80th Leg., R.S., ch. 250, 2007 Tex. Gen. Laws 356, 356–57. Section 395.022(b) is thus "the statute latest in date of enactment." Accordingly, to the extent of any conflict between section 11.168 of the Education Code and section 395.022(b) of the Local Government Code, section 395.022(b) prevails.

We conclude that, pursuant to section 395.022(b) of the Local Government Code, a school district is not required to pay an impact fee imposed by chapter 395 of the Local Government Code unless the district's board of trustees consents to the payment of such fee by entering into a contract with the political subdivision that imposes the fee. Such a contract is excepted from the prohibition in section 11.168, Education Code. Attorney General Opinion GA-0496 (2006) has been modified by section 395.022(b) of the Local Government Code.

## B.    Whether Certain Exactions Constitute an "Impact Fee"

The school district on whose behalf you inquire is particularly concerned about whether five different kinds of exactions may be considered impact fees under chapter 395 of the Local Government Code. Request Letter, *supra* note 1, at 1; Horner Letter #2, *supra* note 1, at 2–3. Chapter 395 defines an "impact fee" as

> a charge or assessment imposed by a political subdivision
> against new development in order to generate revenue for funding or
> recouping the costs of capital improvements or facility expansions

necessitated by and attributable to the new development. The term includes amortized charges, lump-sum charges, capital recovery fees, contributions in aid of construction, and any other fee that functions as described by this definition. The term does not include:

      (A)   dedication of land for public parks or payment in lieu of the dedication to serve park needs;

      (B)   dedication of rights-of-way or easements or construction or dedication of on-site or off-site water distribution, wastewater collection or drainage facilities, or streets, sidewalks, or curbs if the dedication or construction is required by a valid ordinance and is necessitated by and attributable to the new development;

      (C)   lot or acreage fees to be placed in trust funds for the purpose of reimbursing developers for oversizing or constructing water or sewer mains or lines; or

      (D)   other pro rata fees for reimbursement of water or sewer mains or lines extended by the political subdivision.

TEX. LOC. GOV'T CODE ANN. § 395.001(4) (Vernon 2005). The term "capital improvement" is defined to mean

      any of the following facilities that have a life expectancy of three or more years and are owned and operated by or on behalf of a political subdivision:

      (A)   water supply, treatment, and distribution facilities; wastewater collection and treatment facilities; and storm water, drainage, and flood control facilities; whether or not they are located within the service area; and

      (B)   roadway facilities.

*Id.* § 395.001(1). The term "facility expansion" means "the expansion of the capacity of an existing facility that serves the same function as an otherwise necessary new capital improvement, in order that the existing facility may serve new development." *Id.* § 395.001(3). "The term does not include the repair, maintenance, modernization, or expansion of an existing facility to better serve existing development." *Id.*

In a recent opinion, we said that "an exaction is an impact fee under chapter 395 if it is a charge or assessment to fund or recoup the costs of capital improvements or facility expansions, or if it is a fee that functions as such a charge or assessment." Tex. Att'y Gen. Op. No. GA-0482

(2006) at 3. "Chapter 395 does not broadly prohibit property development exaction; rather, it prohibits a political subdivision from levying impact fees without complying with chapter 395." *Id.* at 2 (citation omitted). "Because chapter 395 applies only to impact fees, whether the chapter prohibits a particular property development exaction depends, as a threshold matter, on whether the exaction is an impact fee under the chapter." *Id.* Under section 395.022(b), a school district is not required to pay an impact fee imposed under chapter 395 in the absence of an agreement to do so.

You ask about five specific kinds of fees or charges that may be imposed under chapter 395.[3] Some of those charges—such as those intended to finance roads or drainage impact fees—may easily fit within the definitions of "capital improvement" or "facility expansion" in chapter 395. *See* TEX. LOC. GOV'T CODE ANN. § 395.001(1), (3) (Vernon 2005). And if they are "necessitated by and attributable to the new development," such charges may qualify as "impact fees" for purposes of chapter 395. *Id.* § 395.001(4). However, whether any particular fee fits within the definition of capital improvement or facility expansion and is "necessitated by and attributable to the new development" would involve an investigation and determination of facts. Thus, whether any particular fee constitutes an "impact fee" under chapter 395 would require the resolution of facts and, as a result, cannot be determined in an attorney general opinion. *See* Tex. Att'y Gen. Op. No. GA-0391 (2006) at 12 (resolving questions of fact is beyond the scope of the opinion process).

---

[3]We note that there are other assessment schemes under which a school district may or may not be liable. *See, e.g.,* TEX. LOC. GOV'T CODE ANN. ch. 402, subch. C (Vernon 2005 & Supp. 2007) (relating to municipal drainage utility systems). One statute permits a municipality to charge "a lot or tract of benefitted property for drainage service." *Id.* § 402.047(a); *see* Act of May 15, 2007, 80th Leg., R.S., ch. 885, § 3.76(a)(2), 2007 Tex. Gen. Laws 1905, 2154 (chapter 402 will be renumbered as chapter 552 effective Apr. 1, 2009). A school district, however, "may be exempt" from this charge. *See* TEX. LOC. GOV'T CODE ANN. § 402.053(b)(4) (Vernon 2005 & Supp. 2007) (also to be renumbered in chapter 552 effective Apr. 1, 2009). Under subchapter D of chapter 402, a municipality may, in certain counties, impose certain charges for sewer system improvements and water system improvements. *See id.* §§ 402.061–.062, .065, .068 (also to be renumbered in chapter 552 effective Apr. 1, 2009).

## S U M M A R Y

Under section 395.022(b) of the Local Government Code, a school district is not required to pay an impact fee imposed under chapter 395 unless the district's board of trustees consents to the payment of such fee by entering into a contract with the political subdivision that imposes the fee. Attorney General Opinion GA-0496 (2006) has been modified by section 395.022(b) of the Local Government Code.

Yours very truly,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee